IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

```
MARY CLARK,                   )
                              )
          Plaintiff,          )       8:09CV315
                              )
     v.                       )
                              )
BRUMBAUGH AND QUANDAHL, P.C., )       MEMORANDUM OPINION
LLO,                          )
                              )
          Defendants.         )
_____)
```

## I.  INTRODUCTION

This matter is before the Court on plaintiff's summary judgment motion (Filing No. 29).  In their opposition briefs, defendants have moved for summary judgment (Filing Nos. 42 and 45).

Plaintiff Mary Clark ("Clark") filed this action against defendants Capital One Bank, Inc. ("Capital One") and Brumbaugh & Quandahl, P.C. L.L.O., ("B&Q") for alleged violations of the Fair Debt Collections Practices Act (the "FDCPA"), 15 U.S.C. §§ 1692, et seq, and the Nebraska Consumer Protection Act (the "NCPA"), Neb. Rev. Stat. § 59-1601 et seq.  Clark initially filed her motion for summary judgment on April 20, 2010.  Thereafter, in separate opposition briefs to plaintiff's motion, B&Q and Capital One moved for summary judgment in their favor.  Capital One and Clark have settled (*see* Filing No. 125), making Capital One's motion moot.  For the following reasons, the Court finds Clark's motion should be denied and B&Q's motion should be granted.

## II.  FACTS

**A.  Substantive History**

Clark opened a small business credit card account (the "Account") with Capital One in November 2003 (Affidavit of Richard Napolitano, Filing No. 43-1, ¶ 6; Credit Card Application, Filing No. 46-1, Exhibit A).  The Account application identified WHY USA Independent Brokers Realty ("WHY USA") as the business name for the account and identified Clark as the authorized signatory (Credit Card Application, Exhibit A). Although Clark maintains she used the Account credit card for several consumer purchases (Affidavit of Mary Clark, Filing No. 31-1, ¶ 6; Deposition of Mary Clark, Filing No. 97-2, Exhibit 1A, at 23:17-24:10, 100:8-13, 121:15-123:11) and that she made some payments on the Account from her personal checking account (Clark Affidavit ¶ 7; Clark Deposition at 102:2-5), the Account credit card was also used in business transactions related to WHY USA (Clark Deposition at 24:11-25:13; Deposition of Mary Clark - B&Q's Excerpts ("B&Q's Clark Deposition"), Filing No. 107-1, Exhibit A, at 25:7-23).  For example, the Account was used to purchase advertising in a Council Bluffs, Iowa, newspaper (Clark Deposition 24:11-23), dues to the Omaha Board of Realtors (*Id.* at 24:24-25:13), and office supplies (B&Q's Clark Deposition at 25:16-19).  Clark's husband, John Clark ("John"), was primarily in charge monitoring the Account and making payments (Clark Deposition at 25:14-26:5, 101:5-102:1).  John sometimes made

payments on the Account from WHY USA's business checking account (B&Q's Clark Deposition at 110:10-111:1).

On May 10, 2006, Clark and John made their last payment on the Account, which had an outstanding balance of $6503.09 (Napolitano Affidavit, ¶ 7). Thereafter, Capital One unsuccessfully attempted to collect on the account by hiring third-party debt collectors (*Id.* ¶ 8). Capital One first sent the Account to Northland Group for collection on January 25, 2007, but recalled the account on July 30, 2007, after Northland was unsuccessful in obtaining payment from Clark (*Id.* ¶¶ 8-9). Then, Capital One sent the account to NCO Financial for collection on August 23, 2007, but later recalled the account on February 27, 2008, after NCO Financial also failed to obtain payment from Clark (*Id.* ¶¶ 10-11). In March 2008, Capital One sent the Account, including various related documents, to B&Q for collection (Affidavit of Sara Miller, Filing No. 46-1, ¶¶ 5-7). It does not appear from the record that Capital One ever informed Clark of its movement of the Account between the various third-party debt collectors.

On May 6, 2008, Clark and John, filed for Chapter 7 bankruptcy protection (Copy of Voluntary Petition, Filing No. 43-2, Exhibit B, at 3). The Creditor Matrix attached to the voluntary petition for bankruptcy did not list Capital One, B&Q, Northland Group, or NCO as creditors (*see generally id.* at 10-14), and there is no evidence in the record that any of these entities had any knowledge of Clark's bankruptcy upon the initial

filing of the voluntary petition.  Soon after Clark filed her bankruptcy petition, on May 15, 2008, B&Q sent a demand letter to Clark in connection with the Account (Collection Letter, Filing No. 31-2, Exhibit 1C).  On June 6, 2008, Clark and John filed a "Schedule F - Creditors Holding Unsecured Nonpriority Claims" with the bankruptcy court (Schedule F, Filing No. 43-3, Exhibit C).  Schedule F did contain an entry noting Northland Group as a creditor with regard to the Capital One Account (*Id.* at 12) and an entry noting NCO Financial as a creditor for an "Advertising" debt of $395.00 (*Id.* at 11), but did not list B&Q as a creditor on the Capital One debt.  Also on June 6, 2008, Clark's bankruptcy counsel sent at least four[1] Suggestion of Bankruptcy notices to B&Q, advising B&Q of Clark's pending bankruptcy case (Suggestions of Bankruptcy, Filing No. 31-3, Exs. 2-5).  However, the suggestions were sent in connection with debts Clark and John owed to GE Money Bank, Citibank South Dakota NA, Discover Bank, and American Express Travel Related Services (*Id.*).  The suggestions did not relate to the Capital One Account (*See id.*).  B&Q maintains a policy and procedure of closing its collection files when it receives a Suggestions of Bankruptcy or when it has actual knowledge that a specific debt has been included in a bankruptcy (Miller Affidavit, ¶ 24).  B&Q ceased collecting on

---

[1] Clark maintains there were four Suggestions of Bankruptcy sent B&Q, while B&Q maintains only three were sent.  This disputed fact is immaterial, and for the purposes of this opinion the Court will presume B&Q received four suggestions.

the non-Capital One accounts for which it received Suggestions of Bankruptcy from Clark's bankruptcy counsel.

On June 23, 2008, B&Q filed a complaint on behalf of Capital One with the County Court of Douglas County, Nebraska, alleging Clark owed $9,843.82, plus interest, on the Account (Complaint, Filing No. 31-2, Exhibit 1E). On September 4, 2008, the Bankruptcy Court entered an order granting a discharge to Clark under Chapter 7 (Discharge Order, Filing No. 46-1, Exhibit H). In an affidavit, Clark maintains that the bankruptcy court discharged her indebtedness to Capital One (Affidavit of Mary Clark, Filing No. 31-1, ¶ 10). However, according to filings with Bankruptcy Court, it appears the discharge order was not sent to Capital One, B&Q, Northland Group, or NCO Financial (*See* Certificate of Service, Filing No. 46-1, Exhibit H; *In re Clark*, No. 08-81155, Filing No. 17 (Bankr. D. Neb. Sept. 6, 2008)). On December 24, 2008, Capital One obtained a judgment against Clark in the Douglas County case (Napolitano Affidavit, Filing No. 43-1, ¶ 13).

On February 10, 2009, Clark's bankruptcy counsel filed a motion to reopen the case with the Bankruptcy Court (Motion to Reopen, Filing No. 27-6, Exhibit F). In this motion, Clark alleged, *inter alia*, that Capital One had notice of her bankruptcy, but had impermissibly continued to collect on the Account (*Id.*). The docket sheet in Clark's bankruptcy case, however, indicates the Bankruptcy Court took no action on these allegations, but did act on the other issues Clark identified for

-5-

reopening the case (*See* CM/ECF Docket Sheet for *In re Clark*, Bankr. No. 08-81155 (Bankr. D. Neb.), *available at* https://ecf.neb.uscourts.gov (last visited July 26, 2010)).  No party has provided any evidence as to why the Bankruptcy Court did not rule on whether Capital One's (or B&Q's) collection actions violated the discharge order.

**B.   Procedural History**

Clark initially filed this action on September 6, 2009 (Filing No. 1), but later amended her complaint twice (Filing Nos. 22 and 27).  In her second amended complaint, Clark alleged B&Q had violated the FDCPA through their collection actions on the Account, specifically violating:  15 U.S.C. § 1692e (making false or misleading statements in connection with collecting a debt), § 1692e(2)(A) (making false representations regarding the character, amount, or legal status of the debt), § 1692e(5) (threatening to take action that cannot legally be taken), § 1692e(8) (communicating credit information which is known to be false), § 1692e(10) (using false representations or deceptive means to collect a debt or obtain information about a consumer), and § 1692f (attempting to collect on an amount not due) (Second Amended Complaint, Filing No. 27, ¶ 17).  Clark also generally alleged B&Q and Capital One's conduct constituted a violation of the NCPA, pursuant to Neb. Rev. Stat. § 59-1602, -1609 (*Id.* ¶ 19).

### III. STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Summary judgment is not appropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A fact is material only when its resolution affects the outcome of the case. *Anderson,* 477 U.S. at 248. A material issue is genuine if it has any real basis in the record. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986).

On a motion for summary judgment, the Court must view all evidence and reasonable inferences in the light most favorable to the nonmoving party. *Anderson,* 477 U.S. at 250. However, the nonmoving party may not rest on mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). If a plaintiff cannot support each essential element of her claim, summary judgment will be denied because a complete failure of proof regarding an essential element necessarily renders other facts immaterial. *See id.* at 322-23.

## IV. ANALYSIS

### A. FDCPA Claims

    1. Preclusion

B&Q's primary argument for granting summary judgment in its favor on Clark's FDCPA claim is that the Bankruptcy Code precludes Clark from bringing an FDCPA claim when the FDCPA claim arises from an alleged violation of the discharge injunction imposed in a bankruptcy proceeding. In support of this argument, B&Q refers the Court primarily to the opinion of *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502 (9th Cir. 2002).

In *Walls*, the plaintiff, who had previously filed for bankruptcy under Chapter 7, brought a cause of action against the defendant for an alleged violation of the 15 U.S.C. § 1692f (unfair or unconscionable means of debt collection), when the defendant continued attempting to collect on the plaintiff's debt after the imposition of the automatic stay and after the discharge of the debt. *Walls*, 276 F.3d at 505. The plaintiff also brought causes of action for violations of the automatic stay and discharge injunction. *Wall v. Wells Fargo, N.A.*, 255 B.R. 38, 39 (E.D. Cal. 2000). The district court determined the plaintiff was barred from bringing an FDCPA claim because "Congress ha[d] provided remedies for violations of the automatic stay and discharge injunction provisions in the Bankruptcy Code." *Wells Fargo*, 255 B.R. at 47. On appeal, the Court of Appeals for the Ninth Circuit affirmed the district court's determination. *Walls*, 276 F.3d at 511. The court stated:

-8-

> To permit a simultaneous claim under the FDCPA would allow through the back door what Walls cannot accomplish through the front door-a private right of action. This would circumvent the remedial scheme of the [Bankruptcy] Code under which Congress struck a balance between the interests of debtors and creditors by permitting (and limiting) debtors' remedies for violating the discharge injunction to contempt. "[A] mere browse through the complex, detailed, and comprehensive provisions of the lengthy Bankruptcy Code . . . demonstrates Congress's intent to create a whole system under federal control which is designed to bring together and adjust all of the rights and duties of creditors and embarrassed debtors alike." . . . Nothing in either Act persuades us that Congress intended to allow debtors to bypass the Code's remedial scheme when it enacted the FDCPA. While the FDCPA's purpose is to avoid bankruptcy, if bankruptcy nevertheless occurs, the debtor's protection and remedy remain under the Bankruptcy Code.

*Id.* at 510 (internal citations omitted). B&Q contends the Ninth Circuit's determination should apply in this case and Clark should be precluded from asserting an FDCPA claim when her remedy lies with the Bankruptcy Code.

Subsequent to *Walls*, the Court of Appeals for the Seventh Circuit in *Randolph v. IMBS, Inc.*, 368 F.3d 726 (7th Cir. 2004), analyzed a very similar issue and came to the opposite conclusion reached by the Ninth Circuit in *Walls*. In *Randolph*, the Seventh Circuit determined the Bankruptcy Code did not impliedly repeal the FDCPA to the extent that a bankrupt

plaintiff could not bring an action against a creditor under both statutory schemes if the creditor attempted to collect on a previously discharged debt.  *Randolph*, 368 F.3d at 728, 732.  The district courts[2] in *Randolph* had previously determined the Bankruptcy Code "'preempt[ed]' the FDCPA when the act alleged to transgress the FDCPA also violates the [Bankruptcy] Code."  *Id.* at 729.  On appeal the Seventh Circuit disagreed with the district courts stating "[i]t takes either irreconcilable conflict between the statutes or a clearly expressed legislative decision that one replaces the other" for a court to conclude that a statute has been implicitly repealed by another statute.  *Id.* at 730.  The Seventh Circuit demonstrated the FDCPA and the Bankruptcy Code overlap in their coverage, but that each contained coverage the other lacked.  *Id.* at 731.  The court noted "[o]verlapping statutes do not repeal one another by implication; as long as people can comply with both, then courts can enforce both."  *Id.*  The Seventh Circuit reviewed past instances where the Supreme Court had allowed overlapping but not entirely congruent remedial systems to coexist.  *Id.* at 731, 732 (citing, e.g., *Humana, Inc. v. Forsyth*, 525 U.S. 299 (1999), and *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454 (1975)).  In light of its analysis, the court in *Randolph* determined the Bankruptcy Code did not impliedly repeal the FDCPA.  *Id.* at 732.

---

[2] On appeal, the Seventh Circuit consolidated three district court cases from the Northern District of Illinois that had each confronted the same issue.  *Randolph*, 368 F.3d at 728.

It appears the Eighth Circuit has not addressed the circuit split represented by the *Walls* and *Randolph* opinions. However, there are at least three cases from other district courts within the Eighth Circuit decided subsequent to *Randolph* which addressed whether the Bankruptcy Code bars claims under the FDCPA for attempting to collect on a debt previously discharged in bankruptcy. Each of these cases determined the Bankruptcy Code did not bar the bringing of an FDCPA action allegedly arising from a debt collector's attempt to collect on a previously discharged debt. *See Bagwell v. Portfolio Recovery Assocs., LLC*, No. 4:08-CV-3229, 2009 WL 1708227, at *2 (E.D. Ark. June 5, 2009) (rejecting an argument that an FDCPA claim was barred because the bankruptcy court provided the sole remedy for a violation of a discharge injunction); *Drnavich v. Cavalry Portfolio Serv., LLC*, No. Civ. 05-1022, 2005 WL 2406030, at *2 (D. Minn. Sept. 29, 2005) (concluding the Bankruptcy Code does not preclude an FDCPA claim); *Burkhalter v. Lindquist & Trudeau, Inc.*, No. 4:04CV1803, 2005 WL 1983809, at *1 (E.D. Mo. Aug. 16, 2005) (adopting the rationale of *Randolph*). B&Q's briefs make no reference to any of these cases, so B&Q has failed to provide any principled reason why the Court should not adopt the rationale of these cases. This Court adopts the rationale of the *Randolph, Bagwell, Drnavich*, and *Burkhalter* cases and holds that the Bankruptcy Code does not bar Clark from bringing a cause of action under the FDCPA for a violation allegedly arising from collection efforts initiated after the bankruptcy court entered

the automatic stay and discharge injunction.  The Court will deny summary judgment on this issue.

    2.   Nature of the Debt

        B&Q also contends Clark cannot support an FDCPA claim because the debt Clark incurred on the Account was commercial, not consumer, debt.  The FDCPA applies only to debts as they are defined in the statute.  Debts are "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."  15 U.S.C. § 1692a(5).  However, if the debt arises from a commercial transaction, the FDCPA is inapplicable.  *See Duffy v. Landberg*, 133 F.3d 1120, 1123 (8th Cir. 1998) ("The FDCPA is clearly worded and broadly defines debt as 'any obligation' to pay arising out of a consumer transaction."); *Holman v. West Valley Collection Servs., Inc.*, 60 F. Supp. 2d 935, 935 (D. Minn. 1999) (citing S. Rep. No. 95-382, at 3 (1977), *as reprinted in* 1977 U.S.C.C.A.N. 1695, 1697).  In this case, Clark has alleged and stated in deposition testimony that the debt she incurred on the Account was for personal, family, or household purposes.  However, B&Q points to specific credit card transactions Clark made on the Account as evidence that the Account was used only for commercial purposes for Clark's business, WHY USA.  These include a transaction with a Council Bluffs, Iowa, newspaper for an advertisement, a

transaction with the Omaha Area Board of Real Estate, transactions for office supplies, and payments made on the Account from a business checking account held by WHY USA. The Court finds, with regard to Clark's motion for summary judgment, that when the evidence is viewed in a light most favorable to B&Q, a genuine issue of material fact exists regarding whether the debt incurred in the Account was commercial or consumer debt. Since the debt may have been solely commercial in nature, Clark has failed to prove an essential element of her claim. Thus, the Clark's motion for summary judgment will be denied.

Similarly, the Court will deny summary judgment to B&Q on this issue, as when the evidence is viewed in a light most favorable to Clark, it is possible that the incurred debt was at least partially consumer debt. Although B&Q is correct in its contention that the Account was opened on behalf of WHY USA ostensibly for commercial purposes, the Court must focus on the nature of the debt that was incurred, and not the purpose for which the Account was opened. *See Perk v. Worden*, 475 F. Supp. 2d 565, 569 (E.D. Va. 2007) ("It is worth noting that the debt at issue was not actually incurred until Plaintiff used the card, as opposed to when Plaintiff applied for the card. Although Plaintiff applied for a corporate card, she did not incur the debt until it was used for her personal purposes."). In *Perk*, the plaintiff opened a credit card account in the name of a business she owned, but alleged that she used the corporate credit card for personal purposes. *Perk*, 475 F. Supp. 2d at 567,

569.  The court in *Perk* determined that, although the plaintiff had opened the credit card account for a commercial purpose and may have violated the terms of her credit card agreement, the plaintiff incurred consumer debt when she used the corporate card for personal purposes.  *Id.* at 569-70.  Thus, the plaintiff in *Perk* was not precluded from bringing an FDCPA claim due to the nature of the debt.  Other district courts within the Eighth Circuit have come to a similar conclusion that the nature of the debt is judged by the substance of the transaction that incurs the debt.  *See Shafe v. Tek-Collect, Inc.*, No. 07-327, 2007 WL 4365726, at *2 (W.D. Mo. Dec. 10, 2007) (determining debt incurred for radio advertisements for a business was commercial debt); *Holman*, 60 F. Supp. 2d at 936 (determining debt was commercial debt when a consumer's personal credit card was used by a third party to make an unauthorized purchase of a credit card processing machine).  Although undisputed that Clark used the Account to incur some debt for commercial purchases, when the evidence is viewed in a light most favorable to Clark, she also used the Account to incur consumer debt.  Viewed in a light favorable to Clark, at least part of the Account's debt was consumer debt, and B&Q's motion for summary judgment on this issue will be denied.

    3.   FDCPA Violations & Bona Fide Error Defense

        Having reviewed the preliminary issues, the Court turns to the merits of Clark's FDCPA claim.  Clark argues violations of the FDCPA occurred when B&Q sued Clark for an allegedly

-14-

discharged debt, obtained a judgment against Clark for the allegedly discharged debt, and filed a garnishment. Clark maintains her debt on the Capital One Account was discharged in her Chapter 7 bankruptcy proceeding, so B&Q's debt collection efforts constituted a false representation about the legal status of her debt (§ 1692e(2)(A)), a threat to take an action that could not legally be taken (1692e(5)), a false representation to collect on a debt (§ 1692e(10)), and/or an unfair practice or unconscionable means of collection not permitted by law (§ 1692f(1)).[3] B&Q counters by arguing that Clark's debt to Capital One was never discharged in the bankruptcy proceeding because it was not properly included in Clark's bankruptcy proceeding and because B&Q never received notice that the Account was included in Clark's bankruptcy.

Although not stated explicitly in its briefs, B&Q is asserting the "bona fide error" defense found in the FDCPA at 15 U.S.C. § 1692k(c). The bona fide error defense provides: "A debt collector may not be held liable in any action brought under [the FDCPA] if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures

---

[3] Although Clark's amended complaint (Filing No. 27) states B&Q violated § 1692e(8), no reference to this provision is made in Clark's summary judgment briefs. Further, Clark's allegation that B&Q violated § 1692e generally is seemingly derivative of her argument that B&Q violated § 1692e(10), see Clark's Memorandum in Support of Summary Judgment, Filing No. 30, at 13, and Clark does not address the individual merits of whether § 1692e was violated generally.

reasonably adapted to avoid any error." 15 U.S.C. § 1692k(c); *Ross v. RJM Acquisitions Funding, LLC*, 480, F.3d 493, 495 (7th Cir. 2007). In deciding whether the bona fide error defense applies, the Court may presume without deciding that the defendant violated the FDCPA. *See Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 537 (7th Cir. 2005). The Court will presume without deciding that B&Q's collection efforts of filing a lawsuit against Clark, obtaining a judgment, and filing a garnishment, when Clark had previously filed for Chapter 7 bankruptcy protection, cumulatively constitute an FDCPA violation.

A debt collector asserting the bona fide error defense must demonstrate (1) the presumed FDCPA violation was unintentional; (2) the presumed FDCPA violation resulted from a bona fide error; and (3) the debt collector maintained procedures reasonably adapted to avoid the bona fide error. *Id.*

With regard to the unintentional violation element, the debt collector only needs to show that the FDCPA violation was unintentional, and need not show that its actions were unintentional. *Id.* In this case, the Court finds B&Q's presumed FDCPA violation was unintentional. The undisputed record reflects Clark's initial Creditor Matrix filed with the bankruptcy court did not disclose Capital One, B&Q, or any of the other third-party debt collectors who had been assigned the Account for collection. Further, Clark's Schedule F filing failed to disclose B&Q as collecting on the Account. Moreover,

there is no indication in the record that B&Q received any form of notice that the Capital One Account was included in Clark's bankruptcy.  Although B&Q received notices regarding Clark's bankruptcy pursuant to four different accounts unrelated to the Capital One Account, B&Q had no reason to assume the Capital One Account was included in Clark's bankruptcy.  Accordingly, the Court finds B&Q did not intentionally violate the FDCPA.

The Court also finds the presumed FDCPA violations in this case were the result of a bona fide error, thus fulfilling the second element.  An error is "bona fide" when it was made in good faith or is a genuine mistake, as opposed to a contrived mistake. *Id.* at 538.  As noted above, B&Q received notice of Clark's bankruptcy as it related to other accounts it was collecting that were in Clark's name, and promptly ceased collecting on these accounts.  It makes little sense to believe that B&Q would cease collecting four of Clark's other accounts but not cease collecting on the Capital One Account, unless B&Q thought the Capital One Account was not included in Clark's bankruptcy.  Moreover, it was perfectly reasonable for B&Q not to assume the Capital One Account was included in Clark's bankruptcy, as the Account had been opened on behalf of WHY USA, Clark's real estate business.  B&Q received no notice indicating the Account was part of Clark's bankruptcy, and no reasonable jury could conclude that B&Q's presumed error in continuing to collect on the Account was anything but a bona fide error.

The Court also finds the third element of the bona fide error defense fulfilled. This element requires debt collectors to maintain "procedures adapted to avoid the bona fide error." 15 U.S.C. § 1692k(c). Debt collectors are not required to take every conceivable precaution to avoid the bona fide error; they need only take reasonable precautions. *Kort*, 394 F.3d at 539. The Seventh Circuit has held on at least two occasions that the prompt cessation of debt collection activity upon receiving notification of a debt's discharge in bankruptcy can constitute a reasonable procedure. *Ross v. RJM Acquisitions Funding, LLC*, 480 F.3d 493 (7th Cir. 2007); *Hyman v. Tate*, 362 F.3d 965, 968-69 (7th Cir. 2004). In this case, the record reflects that B&Q maintained a policy and procedure of ceasing debt collection activities when it received notice of a bankruptcy or when it has actual knowledge that a specific debt has been included in a bankruptcy. This policy was seen in action when B&Q ceased collection activity on the four non-Capital One accounts for which B&Q received Suggestions of Bankruptcy from Clark's bankruptcy counsel.

Further supporting a conclusion that the bona fide error defense applies are several other cases with similar fact patterns that have concluded that a debt collector mistakenly attempting to collect on a previously discharged debt can invoke the bona fide error defense. *See, e.g., Ross*, 480 F.3d at 498 (discussed *infra*); *Hyman*, 362 F.3d at 968-69 (affirming application of bona fide error defense to an FDCPA violation that

-18-

occurred after debtor filed for bankruptcy). For example, in *Ross v. RJM Acquisitions Funding LLC*, the court affirmed a determination by the district court that the bona fide error defense applied when a debt collector sent a dunning letter to a bankrupt debtor who had failed to list debts she had contracted under alias names. *Ross*, 480 F.3d at 498. In *Ross*, the debtor had opened a credit card under the alias name of "Lisa Ross," but later filed for bankruptcy under the name "Delisa Ross." *Id.* at 496. The debt collector in *Ross* did not know Delisa Ross and Lisa Ross were the same person and continued to send dunning letters to Lisa Ross for a defaulted credit card debt, even though the credit card debt had been discharged in Delisa Ross's bankruptcy proceeding. *Id.* The court ultimately stated:

> Liability [under the FDCPA] would be especially perverse in this case because the plaintiff is the principal author of the harm of which she complains. In her bankruptcy schedule she was required to list debts contracted under aliases . . . a simple and salutary precaution that she was irresponsible in omitting.

*Id.* at 498. In this case, plaintiff's omission in her bankruptcy filings led the debt collector's continued collection efforts after the bankruptcy proceeding and the bona fide error defense is available to B&Q.[4]

---

[4] Because the Court presumes an FDCPA violation occurred and finds the bona fide error defense applicable, the Court need not address whether the Capital One Account was included in Clark's bankruptcy. The Court expresses no opinion regarding the current legal status of the Capital One Account.

**B.   NCPA Claims**

The United States Supreme Court has stated that "certainly if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers v. Gibb,* 383 U.S. 715, 726 (1996). Dismissal of the state claims is not mandatory but is left to the district court's discretion. *Murray v. Wal-Mart, Inc.*, 874 F.2d 555, 558 (8th Cir. 1989). Nothing in this case indicates that the Court should retain jurisdiction over Clark's NCPA claim. There has not been a substantial investment of judicial time or resources on the NCPA issue warranting federal jurisdiction. With the Clark's FDCPA claim resolved, this action will be dismissed without prejudice as to Clark's NCPA claim.

### V.   CONCLUSION

The Court finds Clark's motion for summary judgment should be denied and B&Q's motion for summary judgment should be granted. A separate order and judgment will be entered in conformance with this opinion.

DATED this 12th day of August, 2010.

BY THE COURT:

/s/ Lyle E. Strom

_____
LYLE E. STROM, Senior Judge
United States District Court